CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 1 5 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROSSER LEE BROWN,<br>    Petitioner, | Civil Action No. 7:05-cv-00613 |
| v. | **MEMORANDUM OPINION** |
| DIRECTOR, VIRGINIA DEPT.<br>OF CORRECTIONS,<br>    Respondent. | By: Hon. James C. Turk<br>Senior United States District Judge |

Petitioner Rosser Lee Brown, a Virginia inmate proceeding pro se, brings this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Brown challenges the validity of his confinement under the 2003 judgment of the Circuit Court for the City of Lynchburg convicting him of statutory burglary, robbery, and use of a firearm in the commission of a felony, and sentencing him to 58 years imprisonment with 30 years suspended. The respondent filed a motion to dismiss, and petitioner responded, making the matter ripe for the court's consideration. Upon review of the record, the court concludes that the motion to dismiss must be granted.

I.

Late in the evening of November 20, 2001, William Cofflin was returning to his home on Parkwood Avenue in Lynchburg, Virginia, when he saw four black males walking down the street near his home and a strange, gray Jeep parked in a pile of leaves in front of his house. After circling the block, he pulled into his driveway and could then see that the windows of Jeep were down, although it was cold outside, and the keys were in the ignition. The men were no longer in sight. Cofflin called the police station and left a message, describing the Jeep as a suspicious vehicle and giving its make, color, location and tag number. After making the call, he walked to a neighbor's house and on his way home, saw the Jeep moving up and down the street at a slow speed with its headlights off. He could not see the car's occupants. Just after Cofflin saw the Jeep pull out of sight, Police Officer Ferron pulled up to investigate the report of a

1

suspicious vehicle.[1] Cofflin flagged him down and told him that the Jeep had just driven away and described why he thought the car was suspicious.[2] Ferron drove off in the same direction, intending to look for the vehicle.

Minutes later, at 8:14 p.m., Ferron heard a radio report from police dispatch that four or five black males had just robbed some victims in Parkwood Trailer Court at gunpoint. Knowing that the trailer court was within blocks of Cofflin's home, Ferron called dispatch to say that he would check out the trailer court and that the suspicious vehicle call and the robbery were probably connected. After Ferron talked with the victims, who described the perpetrators as four black males, Ferron called dispatch to put out an official "be on the lookout" (BOL) for the Jeep.

Investigator Viar was at home that night, off duty, when dispatch called him to report the robbery. When he got in his private car to head to the police station, he heard the BOL for the Jeep on his police radio: be on the look out for a Jeep with a specific tag number with several black males in it. Soon after that, Viar passed a convenience store and saw a Jeep parked at the gas pumps. He turned around, went back, and confirmed that the tag number on the Jeep matched the tag number from the BOL. He sat in his vehicle across the street and watched the Jeep. Several black males exited the store, got into the Jeep, and drove away. Because Viar could not pull over a vehicle using his private car, he alerted other police units in the area and asked them to pull over the Jeep, which they later did.

Officer Sexton, one of the uniformed officers who stopped the Jeep, stated that he considered the situation to be high risk because lots of people were around. He and other officers approached the Jeep with guns drawn and then placed the car's occupants in handcuffs. Sexton went to the driver's door, removed Brown from the car, and handcuffed him. Viar later ordered that the robbery victims be brought in separate vehicles to the Jeep to see if they could

---

[1] Ferron testified that the suspicious vehicle call came in at 7:58 p.m., gave the color, make, and tag number of the Jeep, and stated that four or five black males had been seen leaving the vehicle.

[2] An hour or two later, Ferron called Cofflin back to get more details about what he had seen.

2

identify any of the detained men as participants in the robbery. After these drive by lineups with the victims, Viar was told over the radio that one of the victims had identified the three suspects in the Jeep as being involved in the robbery. Officers at the scene also informed Viar that they had seen items inside the Jeep that matched the description of items taken in the robbery. With the intention of charging the three suspects with the robbery and questioning them further about the incident, Viar then told the officers to take the suspects to the police department and to have the Jeep towed to the police vehicle processing area. At the station, officers interviewed the three suspects separately. Thereafter, Brown was charged with criminal offenses.

Brown pled not guilty. Defense counsel filed a motion to suppress, arguing that because Brown's detention and arrest were unlawful, all evidence flowing from these events should be suppressed. The court conducted a suppression hearing on June 27, 2002, and after hearing extensive testimony, denied the motion to suppress. At trial, the Commonwealth produced evidence that Brown's fingerprint was identified on a window blind in the trailer that had been knocked down during the robbery. Brown also gave inconsistent videotaped statements about his involvement with the robbery, finally admitting that he took his gun into the trailer, touched the blind, and removed a radio from a victim's car. On October 29, 2002, the jury found him guilty of statutory burglary, four counts of robbery, and four counts of using a firearm in the commission of a felon. The court imposed the sentences recommended by the jury: 20 years on the burglary, five years on each robbery count, and four years on each firearm count, for a total of 58 years. The court then suspended 30 years of the sentence.

Brown appealed, arguing that police officers had no probable cause to detain or arrest him on November 20, 2001. The Court of Appeals of Virginia denied the appeal on December 16, 2003. Brown then appealed to the Supreme Court of Virginia, but his petition there was dismissed by order dated May 20, 2004. In 2004, Brown filed a petition for a writ of habeas corpus in the circuit court, raising the following claims:

a.     Petitioner's Fourth Amendment rights were violated because the Lynchburg Police did not have reasonable, articulable suspicion to initiate an investigatory stop and lacked

probable cause to arrest petitioner, so all evidence seized during the illegal search incident to arrest should have been suppressed;

b.  The trial judge erred by altering the nature of petitioner's motion to suppress hearing, considering irrelevant evidence, and allowing admission of seized evidence at trial; and

c.  The evidence was insufficient to sustain the guilty verdict.

The circuit court dismissed the petition by order dated October 14, 2005. The Supreme Court of Virginia refused Brown's subsequent appeal to that court by order dated June 3, 2005. In his federal petition, Brown raises one Fourth Amendment claim with two parts: police officers did not have a reasonable, articulable suspicion to initiate an investigatory stop and lacked probable cause to arrest, so all evidence seized in relation to the arrest should have been suppressed.

II.

Brown exhausted his state court remedies as required under 28 U.S.C. § 2254(b) by presenting his Fourth Amendment claims to the Supreme Court of Virginia on appeal and again in state habeas proceedings. Respondent argues, however, that Brown's claims are barred from federal habeas review for two reasons.

First, the claims are procedurally defaulted. While the Court of Appeals of Virginia addressed Brown's Fourth Amendment claims on the merits, the Supreme Court of Virginia dismissed his subsequent appeal because the petition did not include assignments of error as required under Supreme Court Rule 5:17( c). The Fourth Circuit has found Rule 5:17( c), requiring an appeal petition to state specific assignments of error, to be an independent and adequate state law ground for dismissal, thus barring federal habeas review absent a showing of cause for the default and resulting prejudice or actual innocence by which to circumvent the default. Hedrick v. True, 443 F.3d 342, 360-63 (4th Cir. 2006); Yeatts v. Angelone, 166 F.3d 255, 264 (4th Cir. 1999). Brown makes no such showing. Accordingly, his claims are procedurally barred from review on the merits in this court.

Moreover, his case is barred from federal review by the nature of his claims. A state prisoner is not entitled to federal habeas relief for an alleged Fourth Amendment violation

4

unless he demonstrates that he was denied an opportunity during state criminal proceedings "for full and fair litigation" of the issue. Stone v. Powell, 428 U.S. 465, 494 (1976). Brown does not demonstrate that the suppression hearing conducted by the circuit court denied him a chance for full litigation of his current Fourth Amendment claims. Furthermore, the court of appeals fully addressed the claims on direct appeal. As the issues were thoroughly addressed by the state courts, Brown's claims here are barred under Stone v. Powell.

In any event, even if the Fourth Amendment claims were not barred, Brown would not be entitled to federal habeas relief because the state courts reasonably addressed his claims. The trial court found no real dispute that there was reasonable articulable suspicion to stop the Jeep: the combination of excellent neighborhood watch work and excellent police work and timing. (Tr. 6-27-2002 at 119-121). The court further found that the arrest was authorized by the victims' identification of the detainees by their clothing and items in plain view in the vehicle that were similar to the victims' reported losses. Id. The court of appeals made similar findings. This court cannot find that these rulings were contrary to, or an unreasonable application of, established federal law or that they were based on an unreasonable determination of the facts in the record. Accordingly, this court must defer to the state court's adjudication of the claims as without merit. 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a circuit court of appeals justice or this court issues a certificate of appealability, pursuant to 28 U.S.C. §2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. §2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, the Court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal, petitioner must file a notice of appeal with this court within 30 days of the date of entry of this

Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to petitioner and to counsel of record for the respondent.

ENTER: This 12th day of May, 2006.

*/s/ James C. Turk*
Senior United States District Judge